**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

JENNIFER KATHRYN ANNE ROSE,

    Plaintiff,

vs.

MARTIN LUTHER HOME and JOHN DOES 1-3,

    Defendants.

No. 17-CV-1006-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

| | | |
|---|---|---|
| *I.* | *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| *II.* | *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| *III.* | *RELEVANT FACTUAL BACKGROUND*. . . . . . . . . . . . . . . . . . . . . . | 2 |
| | *A.*    *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | *B.*    *Overview of the Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| *IV.* | *ANALYSIS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| | *A.*    *Untimely Service of Process* . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| |      *1.*    *Parties' arguments*. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| |      *2.*    *Applicable law*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| |      *3.*    *Application*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| | *B.*    *Failure to State a Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| |      *1.*    *Denial of visitation rights* . . . . . . . . . . . . . . . . . . . . . . | 8 |
| |           *a.*    *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . | 8 |
| |           *b.*    *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| |           *c.*    *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| |      *2.*    *Injurious falsehood* . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| |           *a.*    *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . | 12 |
| |           *b.*    *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| |           *c.*    *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
| | *C.*    *Service Costs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| *V.* | *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |

# I. INTRODUCTION

The matter before the court is Defendant Martin Luther Home's ("Martin Luther") "Motion to Dismiss" ("Motion") (docket no. 5).

# II. RELEVANT PROCEDURAL HISTORY

On April 17, 2017, Plaintiff Jennifer Kathryn Anne Rose filed a pro se Complaint (docket no. 1) asserting that Defendants John Does 1-3 and Martin Luther (collectively, "Defendants") generally restricted and denied her right to visit her grandfather, who was a resident of Martin Luther, in violation of 42 C.F.R. § 483 pt. B. *See generally* Complaint at 1-4. Rose also asserts that Defendants "portrayed [her] in a false light and publicly damaged her reputation" when they "filed an abuse claim [against her] with the Iowa Department of Inspection and Appeals." *Id*. at 3. On September 5, 2017, Martin Luther filed the Motion. On September 26, 2017, Rose filed a Resistance (docket no. 7).[1] On October 2, 2017, Martin Luther filed a Reply (docket no. 9). No party has requested oral argument, and the court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

# III. RELEVANT FACTUAL BACKGROUND

Accepting all factual allegations in the Complaint as true and drawing all reasonable inferences in favor of Rose, the relevant facts are as follows:

## A. Parties

Rose is a resident of Hamilton County, Indiana. Complaint at 1. Martin Luther is an Iowa Corporation doing business in Dubuque County, Iowa. *Id*. at 2. John Does 1-3 are employees of Martin Luther who, at all material times, were acting within the scope

---

[1] Rose's Resistance is untimely. *See* LR 7(e) (providing that a resistance must be filed within fourteen days after a motion is served). Nevertheless, the court shall consider Rose's Resistance. Rose is cautioned to strictly comply with the Local Rules in the future. *See Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983) (recognizing that pro se litigants are not excused from compliance with procedural and Local Rules).

of their employment and agency. *Id*.

### B. *Overview of the Dispute*

On or about April 10, 2015, Rose's grandfather was admitted into hospice care at Martin Luther's skilled nursing facility. *Id*. On April 14, 2015, Rose found her grandfather unresponsive and squeezed the tip of his finger after she failed "to arouse him by voice or agitation." *Id*. at 2-3. On April 15, 2015, employees of Martin Luther filed an abuse claim with the Iowa Department of Inspection and Appeals based on Rose squeezing her grandfather's finger. *Id*. at 3. The Iowa Department of Inspection and Appeals "denied the abuse charge against [Rose]." *Id*. Rose contends that Defendants impeded her ability to visit her grandfather by filing the abuse claim, requiring her to call Martin Luther "fifteen minutes . . . prior to any visit" and "insist[ing] [that she] had to sign in and out when visiting the facility." *Id*. Rose also claims that the Defendants required her to be accompanied by a chaperone when visiting, refused to let her stay overnight and eventually contacted law enforcement to have her arrested for trespassing. *Id*. at 3-4.

### IV. ANALYSIS

In the Motion, Martin Luther seeks dismissal pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) due to "untimely service of process." Motion at 1. Martin Luther also seeks dismissal pursuant to Rule 12(b)(6) due to Rose's alleged "failure to state a claim." *Id*. The court shall address each basis for dismissal in turn.

### A. *Untimely Service of Process*

Rose filed her Complaint on April 17, 2017. On that same date, the Clerk of Court filed a Civil Case Packet (docket no. 2-1) which included a copy of what was, at that time, the current version of Local Rule 41. *See* Civil Case Packet at 24. That version of Local Rule 41 stated in relevant part that, "[w]here service has not been made on any defendant within 120 days after the filing of the complaint, and the plaintiff has failed to file a

statement in writing within 127 days after the filing of the complaint setting forth good cause for why service has not been made," the Clerk of Court shall dismiss the action without prejudice. *Id*.[2] In May 2017, Martin Luther "received a Notice of Lawsuit and Request for Waiver of Service of Summons by mail." Declaration of Janet Warren (docket no. 5-2) at 1. Martin Luther did not "respond to the request to waive service of process." *Id*. Martin Luther was ultimately served on August 14, 2017, exactly 119 days from the date that the Complaint was filed. *See id*. at 2; *see also* Proof of Service (docket no. 4) at 1.

### 1. *Parties' arguments*

Martin Luther argues that the Complaint "should be dismissed for untimely service of process." Brief in Support of the Motion (docket no. 5-1) at 4. Martin Luther contends that Rose's failure to serve it within the 90-day period prescribed by Federal Rule of Civil Procedure 4(m) requires the court to dismiss the cause of action because neither good cause nor excusable neglect warrant an extension. Rose asserts that she relied on the information that she received from the Clerk of Court, which provided "that she had 120 days to formally serve" Defendants. Resistance at 2. She argues that "the court should accept the service made in good faith within the 120 days." *Id*.

### 2. *Applicable law*

Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve each defendant "within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m). "[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time

---

[2] On May 1, 2017, the Local Rules were revised and Local Rule 41 now provides, in relevant part, that the Clerk of Court will dismiss a civil action without prejudice "[w]here service has not been made on any defendant within 90 days after the filing of the complaint, and the plaintiff has failed to file a statement in writing within 97 days after the filing of the complaint setting forth good cause for why service has not been made." LR 41(a)(1).

that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States*, 517 U.S. 654, 672 (1996). Extensions of the 90-day deadline are not granted as a matter of course. "[U]nder Rule 4(m), if the district court concludes there is good cause for [the] plaintiff's failure to serve within [90] days, it shall extend the time for service." *Kurka v. Iowa Cty., Iowa*, 628 F.3d 953, 957 (8th Cir. 2010) (emphasis omitted) (quoting *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996)). "If good cause is not shown, the district court may grant an extension if the plaintiff demonstrates excusable neglect." *Peer v. Vilsak*, 563 F. App'x 504, 505 (8th Cir. 2014) (per curiam). The district court retains substantial discretion at each step of the analysis. *See Colasante v. Wells Fargo Corp.*, 81 F. App'x 611, 612-13 (8th Cir. 2003) (per curiam). The plaintiff bears the burden of showing "good cause" or "excusable neglect." *See Peer*, 563 F. App'x at 505 (stating that "the plaintiff must demonstrate good cause for failure to serve" and that it is the plaintiff's burden to "demonstrate[] excusable neglect").

"Rule 4(m) does not define good cause, and courts have not given conclusive meaning to the phrase." *Kurka*, 628 F.3d at 957; *see also Colasante*, 81 F. App'x at 613 ("[T]he standard of good cause, like many others in the law, is necessarily amorphous."). "A showing of good cause requires at least . . . good faith and some reasonable basis for noncompliance with the rules." *Kurka*, 628 F.3d at 957 (quoting *Adams*, 74 F.3d at 887). "Whether or not [good cause] has been satisfied is largely dependent upon the facts of each individual case." *Colasante*, 81 F. App'x at 613. "Good cause is likely shown when the plaintiff's failure to complete service in a timely fashion is a result of the conduct of a third person (typically the process server), the defendant has evaded service or engaged in misleading conduct, the plaintiff has diligently tried to effect service or there are understandable mitigating circumstances, or the plaintiff is proceeding pro se or in forma pauperis." *Peer*, 563 F. App'x at 505.

*3.     Application*

The court finds that Rose has shown good cause sufficient to warrant an extension under Rule 4(m). Although "pro se litigants are not excused from compliance with relevant rules of the procedural and substantive law," *Schooley*, 712 F.2d at 373, the court is mindful that Rose relied on the version of the Local Rules that she was provided by the Clerk of Court in concluding that she had 120 days to serve Defendants. Such reliance on Clerk of Court staff would be insufficient to establish good cause in most cases. *See Gabriel v. United States*, 30 F.3d 75, 77 (7th Cir. 1994) (concluding that "reliance on the advice of an employee of the District Court Clerk . . . does not constitute 'good cause'" and noting that "reliance on the advice of a Clerk's office employee cannot excuse plaintiff's counsel's failure to do basic research"); *Kurka v. Iowa Cty., Iowa*, No. 08-CV-95-LRR, 2009 WL 906037, at *5 (N.D. Iowa Mar. 30, 2009) ("Ensuring that service is completed is not a ministerial task for staff members, as counsel for [the plaintiff] claims, but rather an important responsibility for the lawyer."). As a pro se litigant, however, Rose's error, borne by reasonable reliance on the Civil Case Packet that she received, is more understandable. *See Maxwell v. Golden*, 490 F. App'x 845, 846 (8th Cir. 2012) (reversing dismissal for failure to timely serve the defendants, in part, because the plaintiff was proceeding pro se and because he reasonably relied on an erroneous docket entry).

The court finds that Rose made a good faith and reasonable attempt to comply with the rules of service. The court notes that Rose attempted to secure a waiver of formal service of process approximately one month after filing her Complaint. *See* Declaration of Janet Warren at 1. Additionally, Rose ultimately complied with the 120-day time frame provided in the Civil Case Packet. *See* Service of Process at 1; *see also Bullock v. United States*, 160 F.3d 441, 442 (8th Cir. 1998) (concluding that the district court did not abuse its discretion in dismissing the pro se plaintiffs' complaint "[b]ecause over 120 days had passed since [the] plaintiffs filed their complaint, and the [d]istrict [c]ourt had granted a

twenty-day extension" with which the plaintiffs failed to comply). The court finds that under the totality of the circumstances of this case, Rose has established good cause for her failure to serve Martin Luther within 90 days.

Accordingly, the Motion shall be denied as to the request to dismiss the Complaint for failure to timely serve Martin Luther. However, the court notes that Rose has failed to timely serve John Does 1-3. The court finds that Rose has failed to allege, let alone prove, either good cause or excusable neglect for her failure to serve John Does 1-3 in the year since she filed her Complaint. Therefore, the court shall, on its own motion, dismiss John Does 1-3 from this action without prejudice. *See* Fed. R. Civ. P. 4(m); *see also* Notice of Dismissal (docket no. 3) (providing that the action "will be dismissed . . . unless appropriate action is taken no later than [September 5, 2017]").

### B. Failure to State a Claim

The Federal Rules of Civil Procedure provide for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When analyzing a Rule 12(b)(6) motion, the court must accept all of the factual allegations in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838-39 (8th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). This standard requires a complaint to "contain factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

Although a plaintiff need not provide "detailed" facts in support of his or her

allegations, the "short and plain statement" requirement of Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008). "A pro se complaint must be liberally construed and 'pro se litigants are held to a lesser pleading standard than other parties.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (citation omitted) (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)).

### 1. Denial of visitation rights

Rose claims that the Defendants violated her rights under 42 C.F.R. § 483.10 by interfering with, and denying her visitation with, her grandfather. *See* Complaint at 3-4; *see also* 42 C.F.R. § 483.10 (providing visitation for nursing home residents).

#### a. Parties' arguments

Martin Luther asserts that this claim should be dismissed because "[t]he law does not recognize a cause of action for violation of visitation rights to a family member of a patient in a nursing home." Brief in Support of the Motion at 7. Rose's sole argument is that the court should not dismiss this claim because she "made a separate petition and motion to join parties . . . and to amend the [C]omplaint." Resistance at 3. However, on November 21, 2017, the court denied Rose's pro se "Motion to Join Parties as Defendants Under Rule 19 and Motion to Amend Complaint Appropriately Under Rule 15" ("Motion to Join Parties and Amend") (docket no. 6). *See* November 21, 2017 Order (docket no. 17). Therefore, the court must determine whether Rose has a private right of action to bring her visitation claim.

8

### b. Applicable law

"Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). "[A] regulation can[not] conjure up a private cause of action that has not been authorized by Congress." *Id.*; *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 n.18 (1979) ("[T]he language of the statute and not the rules must control."). "[F]or a statute to create . . . private rights, its text must be 'phrased in terms of persons benefitted.'" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). "[O]nly 'rights, not the broader or vaguer "benefits" or "interests," may be enforced under the authority of [§ 1983].'" *Spectra Commc'ns Grp., LLC v. City of Cameron, Mo.*, 806 F.3d 1113, 1119 (8th Cir. 2015) (second alteration in original) (emphasis omitted) (quoting *Gonzaga*, 536 U.S. at 283).

### c. Application

Rose contends that her rights under 42 C.F.R. § 483 were violated. Chapter 42 C.F.R. § 483 "contain[s] the requirements that [a nursing facility] must meet in order to qualify to participate as a Skilled Nursing Facility in the Medicare program, and as a nursing facility in the Medicaid program." 42 C.F.R. § 483.1(b). The regulations provide that "the facility must promote and facilitate resident self-determination through support of resident choice," including the "right to receive visitors of his or her choosing at the time of his or her choosing, subject to the resident's right to deny visitation when applicable, and in a manner that does not impose on the rights of another resident." *Id.* § 483.10(f)(4). "The facility must provide immediate access to a resident by immediate family and other relatives of the resident, subject to the resident's right to deny or withdraw consent at any time." *Id.* § 483.10(f)(4)(ii).

As noted, however, a regulation alone cannot create a private right of action. *See Alexander*, 532 U.S. at 291. Rose does not point the court to any statute creating a private

right of action that would allow her to enforce her alleged right to visitation. In the absence thereof, the regulations to which Rose cites are insufficient to maintain a cause of action. *See Freeman v. Fahey*, 374 F.3d 663, 665 n.2 (8th Cir. 2004) (noting that "the regulations could not create a private right of action"). Rose provides no authority for her argument that there exists a private right of action under 42 C.F.R. § 483, and therefore, she has failed to state a claim. *See Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004) (holding that the duty to liberally construe pro se pleadings does not require the district court "to divine the litigant's intent and create claims that are clearly not raised").

Some plaintiffs have sought to bring a cause of action, similar to Rose's claim, pursuant to the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. §§ 1395i–3, 1396r, which establishes baseline standards that nursing facilities must meet. *See generally* 42 U.S.C. § 1396r(b). Even assuming that Rose's Complaint could be construed as relying on the FNHRA as statutory authority supporting her claim, the court finds that these statutes and regulations would not support a private right of action. Although beneficial to residents, the statutes and regulations are inarguably directed toward nursing facilities. "For a statute to create . . . private rights, its text must be phrased in terms of persons benefitted." *Gonzaga*, 536 U.S. at 284 (quotation omitted); *see also Kalan v. Health Ctr. Comm'n of Orange Cty., Va.*, 198 F. Supp. 3d 636, 643 (W.D. Va. 2016) (noting that "[t]here is no doubt that nursing home residents are benefitted by these provisions," but explaining that "[42 U.S.C.] § 1983 is meant to protect against the deprivation of 'rights,' not the broader or vaguer 'benefits' or 'interests'" (emphasis omitted) (quoting *Gonzaga*, 536 U.S. at 283)).

The majority of courts to consider whether the FNHRA and its regulations confer a private right of action, either under 42 U.S.C § 1983 or as an implied right of action, have concluded that they do not. *See Liptak v. County*, No. 16-225 ADM/JSM, 2016 WL 5349429, at *5 (D. Minn. Sept. 23, 2016) (concluding "that the FNHRA does not provide

a private right of action enforceable by § 1983" because "the FNHRA is not written in clear language to 'unambiguously' confer rights to nursing home residents," but rather specifies "what nursing homes must do to receive federal funding"); *James v. Bd. of Curators of the Univ. of Mo.*, No. 4:09CV2066 RWS, 2011 WL 147910, at *4 (E.D. Mo. Jan. 18, 2011) (concluding that the plaintiff could not assert a private cause of action under 42 C.F.R. § 483.25); *Duncan v. Johnson-Mathers Health Care, Inc.*, No. 5:09-CV-0417-KKC, 2010 WL 3000718, at *3 (E.D. Ky. July 28, 2010) (finding that the FNHRA "does not have an 'unmistakable' focus on the rights of individual nursing home residents, but instead focuses on requirements that the nursing homes must meet in order to become and remain eligible for funding" and concluding that there is no private cause of action under the statute, including the regulation at 42 C.F.R. § 483.25); *Tinder v. Lewis Cty. Nursing Home Dist.*, 207 F. Supp. 2d 951, 957 (E.D. Mo. 2001) (concluding that the FNHRA and corresponding regulations "are part of a regulatory scheme designed to bring long term care facilities into substantial compliance with federal Medicare and Medicaid requirements and were not intended to establish an independent cause of action for violations of those requirements"); *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1330 (N.D. Ga. 2000) (concluding that the FNHRA does not confer a private cause of action for violations of the act); *see also Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 293 (3d Cir. 2010) ("[The plaintiff's] claims under 42 C.F.R. §§ 483.10, 483.13, 483.15, and 483.25 do not provide a basis for jurisdiction pursuant to [28 U.S.C.] § 1331 because they merely set forth the requirements that a facility must meet in order to qualify to participate in Medicare and Medicaid; they do not confer a private cause of action."). The court finds this case law persuasive and similarly holds that the FNHRA does not demonstrate a clear and unambiguous intent by Congress to confer individual rights on nursing home residents that would provide for either private enforcement under the statute or under § 1983.

Finally, even assuming that the regulation provided a private cause of action, Rose's claim would fail because the regulation at issue speaks in terms of residents' visitation rights while they reside within a skilled nursing facility. No language within the regulations purports to extend this right to visitors of such a facility. *See, e.g.*, *Fairley v. PM Mgmt.-San Antonio AL LLC*, SA-17-CA-0426-JWP, 2017 WL 6403056, at *3 (W.D. Tex. Aug. 27, 2017) ("Even if rights exist under 42 C.F.R. § 483.10 for [the resident] they . . . must be presented by his legal guardian."); *Lewis v. Arthur B. Hodges Ctr., Inc.*, 230 F. Supp. 2d 724, 727 (S.D. W.Va. 2002) (explaining that "42 C.F.R. § 483.10 clearly refers to the rights *residents* of long-term care facilities have, not visitors such as [the] [p]laintiff" and concluding that "[t]he federal regulation clearly does not provide any rights for visitors to these facilities"). Rose was not a resident of Martin Luther and, thus, had no visitation rights which could be denied.

Accordingly, the court shall grant the Motion as to Rose's claim for denial of visitation rights.

### 2. *Injurious Falsehood*

Rose claims that Defendants "filed an abuse claim [against her] with the Iowa Department of Inspection and Appeals" which "portrayed [her] in a false light[3] and publicly damaged her reputation." Complaint at 3.

#### a. *Parties' arguments*

Martin Luther contends that Rose has failed to plead that it made untruthful statements about her, as is required to assert a libel claim. Reply at 3-4. Martin Luther further asserts that Rose cannot avoid this alleged defect because she has not specifically alleged a claim of libel per se, and further asserts that such a claim would not be available to Rose because "[r]eporting [the] possible abuse of a nursing home resident to the

---

[3] Although Rose repeatedly uses the term "false light" in her Complaint, she clarifies in the Resistance that her claim is "injurious falsehood (libel)." Resistance at 3.

12

required reporting authorities . . . is a matter of public concern." *Id.* at 3 n.1. Rose contends that her Complaint "includes a claim of Injurious Falsehood (libel)" and "[t]he court should not dismiss the action." Resistance at 3.

### b. *Applicable law*

"Defamation includes the twin torts of libel and slander. Libel involves written statements, while slander involves oral statements." *Bierman v. Weier*, 826 N.W.2d 436, 444 (Iowa 2013) (quoting *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004) *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016)). "Iowa courts recognize two types of libel: 'libel per se and libel per quod.'" *Doe v. Hagar*, 765 F.3d 855, 860 (8th Cir. 2014) (quoting *Schlegel v. Ottumwa Courier, Inc.*, 585 N.W.2d 217, 222 (Iowa 1998)). "Statements that have a 'natural tendency to provoke the plaintiff to wrath or to expose [her] to public hatred, contempt, or ridicule, or to deprive [her] of the benefit of public confidence or social intercourse' are defamatory as a matter of law and can give rise to a claim for libel per se." *Id.* at 860-61 (quoting *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996)). "Statements qualifying as libel per se have been described in four general categories: 'imputation of (1) certain indictable crimes, (2) loathsome disease, (3) incompetence in occupation, and (4) unchastity.'" *Home Show Tours, Inc. v. Quad City Virtual, Inc.*, 827 F. Supp. 2d 924, 941 (S.D. Iowa 2011) (quoting *Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004)). "In statements that are libelous per se, falsity, malice, and injury are presumed and proof of these elements is not necessary." *Doe*, 765 F.3d at 861 (quoting *Kiesau*, 686 N.W.2d at 175).

"On the other hand, '[a] statement is libelous per quod if it is necessary to refer to facts or circumstances beyond the words actually used to establish the defamation.'" *Sykes v. Hengel*, 394 F. Supp. 2d 1062, 1072 (S.D. Iowa 2005) (alteration in original) (quoting *Johnson*, 542 N.W.2d at 510). To establish a prima facie case of libel per quod, "the plaintiff must show the defendant '(1) published a statement that (2) was defamatory (3)

13

of and concerning the plaintiff, and (4) resulted in injury to the plaintiff.'" *Kiesau*, 686 N.W.2d at 175 (quoting *Johnson*, 542 N.W.2d at 510). "[A] plaintiff must prove that [the] defamatory statements were false, made with malice, and caused damage." *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). "The truth of the statement is an absolute defense." *Id.*; *see also King v. Sioux City Radiological Grp., P.C.*, 985 F. Supp. 869, 878 (N.D. Iowa 1997) (stating that "the truth of the libelous statements remains as an absolute defense to liability for those statements even if the statements constitute libel per se" (citations omitted)).

  *c.* *Application*

Martin Luther has not provided the court with any authority to support its assertion that a complaint must specifically allege either libel per se or libel per quod. Even assuming such a requirement existed, "a pro se complaint must be liberally construed." *Topchian*, 760 F.3d at 849. "[I]f the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However, the court finds that it need not construe Rose's claim as libel per se, in which case falsity, malice and injury would be presumed, because Rose has sufficiently pleaded that Martin Luther's alleged statements were defamatory.

"Defamation is an impairment of a relational interest; it denigrates the opinion which others in the community have of the plaintiff and invades the plaintiff's interest in [her] reputation and good name." *Kiesau*, 686 N.W.2d at 175 (quoting *Schlegel*, 585 N.W.2d at 221). At its core, "defamation is based on the transmission of derogatory statements." *Id.* (quoting *Schlegel*, 585 N.W.2d at 221). As stated, "[t]he truth of the statement is an absolute defense." *Huegerich*, 547 N.W.2d at 221. Martin Luther contends that because Rose admits that she did "squeeze[] the tip of [her] grandfather's

14

finger" their report was truthful and Rose's claim fails. Brief in Support of the Motion at 12.

Martin Luther misconstrues Rose's claim. In her Complaint, Rose alleges that the act of "fil[ing] an abuse claim with the Iowa Department of Inspection and Appeals" against her "publicly damaged her reputation." Complaint at 3. Although Rose does not dispute that she squeezed her grandfather's finger, nowhere in her Complaint does she admit to abusing him. Rather, she states that Martin Luther filed the abuse claim for the purpose of preventing her from visiting her grandfather and that this abuse allegation portrayed her in a "false light." *Id*. Construing the Complaint liberally, as the court must, Rose has sufficiently alleged that Martin Luther made a false claim of abuse against her. The court finds that alleging someone has abused their grandfather is sufficient to injure the reputation of that person. *See McFarland v. McFarland*, 684 F. Supp. 2d 1073, 1087 (N.D. Iowa 2010) (concluding that "an email communication [sent] to over 300 households" which accused the plaintiff "of being physically abusive" was defamatory).

Accepting all allegations in the Complaint as true, and drawing all reasonable inferences in the light most favorable to Rose, the court concludes that she has alleged sufficient facts to establish a prima facie claim of libel. Accordingly, the court shall deny the Motion as to the libel claim.

### C. *Service Costs*

In the Resistance, Rose requests that the court order Martin Luther to pay $525 for her costs to effect service—$100 in expenses incurred in making service, $100 in fees for an attorney consultation on obtaining a process server and $300 for Rose's own "research and due diligence to execute the formal service [which] took more than three hours from [her] professional time." *See* Resistance at 3-4. Martin Luther consents to paying $100 for the expenses incurred in making service, but asserts that Rose is not entitled to any additional fees.

The court finds that Rose is entitled to $100 in expenses incurred in making service. *See* Fed. R. Civ. P. 4(d)(2)(A) (providing that "[i]f a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant . . . the expenses later incurred in making service"). The court concludes that Rose is not entitled to any additional fees as Federal Rule of Civil Procedure 4(d)(2) only provides for attorney fees expended in drafting a motion to collect service fees. *See* Fed. R. Civ. P. 4(d)(2)(B) (allowing for "the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses"). Further, Rose is not entitled to any attorney fees as she is proceeding pro se. *See Treasurer, Trs. of Drury Indus., Inc. Health Care Plan & Tr. v. Goding*, 692 F.3d 888, 898 (8th Cir. 2012) ("[W]here an attorney represents himself personally, an award of attorneys' fees is not appropriate."); *Schottel v. Young*, No. 4:10CV1673 HEA, 2011 WL 4600701, at *3 (E.D. Mo. Oct. 3, 2011) (agreeing "with those courts which have determined that attorneys' fees are not warranted for Rule 4 attorneys fees when the plaintiff is acting as his own attorney"). Accordingly, the court shall only award Rose $100 in expenses incurred in making service.

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED**:

(1) The Motion to Dismiss (docket no. 5) is **GRANTED IN PART** as to the denial of visitation rights claim and **DENIED IN PART** as to the libel claim;

(2) Defendants John Does 1-3 are **DISMISSED WITHOUT PREJUDICE**; and

(3) Defendant Martin Luther Home is **ORDERED** to pay Rose $100 within 14 days from the date of this Order.

**IT IS SO ORDERED.**

Dated this 24th day of April, 2018.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA