**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER KATHRYN ANNE ROSE, <br><br> Plaintiff, <br><br> vs. <br><br> MARTIN LUTHER HOME, <br><br> Defendant. | No. 17-CV-1006-LRR <br><br> **ORDER** |

_____

*TABLE OF CONTENTS*

*I.     INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.    RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*III.   SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.    SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . . *2*

*V.     RELEVANT FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . *4*

    *A.     Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.     Overview of the Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*VI.    ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

    *A.     Parties' Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
    *B.     Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
    *C.     Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

*VII.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

*I. INTRODUCTION*

The matter before the court is Defendant Martin Luther Home's ("Martin Luther") "Motion for Summary Judgment" ("Motion") (docket no. 28).

*II. RELEVANT PROCEDURAL HISTORY*

On April 17, 2017, Plaintiff Jennifer Kathryn Anne Rose filed a pro se Complaint (docket no. 1) asserting that Defendants John Does 1-3 and Martin Luther (collectively,

"Defendants") generally restricted and denied her right to visit her grandfather, who was a resident of Martin Luther, in violation of 42 C.F.R. § 483 pt. B. *See generally* Complaint at 1-4. Rose also asserted that Defendants "portrayed [her] in a false light and publicly damaged her reputation" when they "filed an abuse claim [against her] with the Iowa Department of Inspection and Appeals."[1] *Id*. at 3. On April 24, 2018, the court dismissed John Does 1-3 and dismissed Rose's denial of visitation rights claim. *See* April 24, 2018 Order (docket no. 26) at 16. Only Rose's defamation claim against Martin Luther remains.

On May 14, 2018, Martin Luther filed the Motion. On June 1, 2018, Rose filed a Resistance (docket no. 30). On June 11, 2018, Martin Luther filed a Reply (docket no. 31). No party has requested oral argument, and the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has diversity jurisdiction over the claims because complete diversity exists between the parties and Rose alleges that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States.").

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Hilde v. City of Eveleth*, 777 F.3d 998, 1003 (8th Cir. 2015) (quoting

---

[1] Rose subsequently clarified that she was raising an "injurious falsehood (libel)" claim. Resistance to Motion to Dismiss (docket no. 7) at 3.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1157 (8th Cir. 2016) (quoting *Gazal v. Boehringer Ingelheim Pharm., Inc.*, 647 F.3d 833, 837-38 (8th Cir. 2011)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts' . . . ." *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion for summary judgment, the nonmoving party must substantiate [her] allegations with sufficient probative evidence [that] would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy." *Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018) (third alteration in original) (quoting *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614

3

F.3d 799, 807 (8th Cir. 2010).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to the nonmoving party and affording her all reasonable inferences, the uncontested material facts are as follows.

### A. Parties

Rose is a resident of Hamilton County, Indiana. Complaint at 1. Martin Luther is an Iowa Corporation doing business in Dubuque County, Iowa. *Id*. at 2.

### B. Overview of the Dispute

On April 10, 2015, Rose's grandfather, Harold Lindstrom, was admitted into hospice care at Martin Luther's skilled nursing facility. *Id*. During her visits with Lindstrom, Rose often gave him "unthickened Ensure to drink through a straw" despite repeated instruction from Martin Luther's staff that Lindstrom was not to be given unthickened liquids because he had a heightened risk of aspiration. Statement of Undisputed Material Facts (docket no. 28-2) ¶¶ 19-20. On April 14, 2015, Rose found Lindstrom unresponsive and squeezed the tip of his finger after she failed "to arouse him by voice or agitation." Complaint at 2-3. On that same date, Amanda Wachendorf, the Director of Social Services at Martin Luther, received a report that Rose had pinched Lindstrom. Appendix in Support of Motion (docket no. 29) at 48; Statement of Undisputed Material Facts ¶¶ 23-24. A certified nursing assistant ("CNA") observed "a 1x1 [centimeter] pink area [on] [Lindstrom's] left index finger where . . . [he] was pinched." Appendix in Support of Motion at 113. Another CNA reported that Rose "said that she did [a] sternal rub on [Lindstrom]." *Id*.

On April 15, 2015, Nurse Courtney Friedman included the following note in Lindstrom's medical records:

> Call received from social worker, [Wachendorf]. [Wachendorf] states that she received a call from [Lindstrom's power of attorney], Janet [Warren], stating that CNA (Sam)

4

> reported that [Lindstrom] was being pinched by [Rose], attempting to wake him up. Spoke with CNA and she tells this nurse this also. [Lindstrom] noted to have a 1x1 [centimeter] pink area to left index finger where CNA reports that resident was pinched. Another CNA (Carly) reports that [Rose] had said that she did sternal rub on resident but that CNA did not witness it. No injuries to sternum noted. Spoke with [Rose] and [she] denies either, states she was questioning doing these things but did not actually do them. [Warren] questioning dependent adult abuse. [Warren] speaks with [Wachendorf] and [Wachendorf] calls this staff nurse. [Rose] may visit resident but must be accompanied by family member or staff member at all times.

*Id*. On April 15, 2015, Wachendorf reported to the Iowa Department of Human Services ("DHS") that Rose had pinched Lindstrom, self-reported performing a sternal rub on Lindstrom and repeatedly failed to comply with his dietary restrictions. *Id*. at 48. The report stated:

> [Lindstrom's] granddaughter has been witnessed by staff pinching him causing a mark on his hand. She also reported doing a sternal rub on him to wake him up. He is lethargic and on Hospice care. [Rose] and her family have also been non-compliant with [Lindstrom's] dietary restrictions which puts him at high risk for aspiration.

*Id*. at 53. DHS reviewed the report and concluded that because "Rose did not fit the state definition of caretaker . . . DHS would not accept the report for investigation." *Id*. at 49.

## VI. ANALYSIS

In the Motion, Martin Luther contends that summary judgment on Rose's defamation claim is proper because Martin Luther "is entitled to statutory immunity for its employee's actions of reporting, as a mandatory reporter, potential dependent adult abuse to DHS." Brief in Support of Motion (docket no. 28-1) at 7. Martin Luther further asserts that "the report was privileged because it was communicated under proper circumstances to the proper people." *Id*. Martin Luther further argues that Rose's "claim

5

also fails because she cannot present evidence to support the elements of a defamation claim." *Id*. at 15. For the reasons stated below, the court finds that it need only address Martin Luther's statutory immunity argument.

### A. Parties' Arguments

In the Motion, Martin Luther contends that it is "protected by statutory immunity" because, to the extent that it could be held vicariously liable for the actions of its employees, "[e]mployees of nursing homes are entitled to statutory immunity for their good faith actions in reporting suspected dependent adult abuse." *Id*. at 7-8. Rose contends that Warren, Lindstrom's daughter, power of attorney and the Executive Director of Luther Manor Communities, "directed her employee, Amanda Wachendorf, to make the report of abuse" and that "[t]his was done maliciously." Resistance at 1; *see also* Statement of Material Facts ¶¶ 4, 6, 10. Rose asserts that Martin Luther "either knew or should have known that" Rose was utilizing "standard methods . . . for arousing an[] unresponsive person" and that these were "not acts of abuse." Resistance at 2. She further contends "that the report was falsely made in an attempt to justify and prevent [her] from visiting . . . her grandfather." *Id*.

### B. Applicable Law

Iowa Code § 235B.3 states in relevant part that a social worker "who in the course of employment, examines, attends, counsels, or treats a dependent adult and reasonably believes the dependent adult has suffered abuse, shall report the suspected dependent adult abuse to [DHS]." Iowa Code § 235B.3(2)(g). "A person participating in good faith in reporting . . . a case of dependent adult abuse has immunity from liability, civil or criminal, which might otherwise be incurred or imposed based upon the act of making the report . . . ." *Id*. § 235B.3(10). Iowa courts have not yet addressed the application of statutory immunity in cases of alleged dependent adult abuse, but have adopted a subjective good faith standard in cases involving reports of alleged child abuse. *See Nelson v.*

6

*Lindaman*, 867 N.W.2d 1, 8 (Iowa 2015) (adopting the subjective good faith standard in the context of Iowa Code § 232.73, which provides immunity to persons who "participat[e] in good faith in the making of a report . . . or aiding and assisting in an investigation of a child abuse report"). The court finds that the similar language in these two statutes renders the child abuse case law applicable to the issue presently before the court. *Compare* Iowa Code § 232.73(1) ("A person participating in good faith in the making of a report . . . or aiding and assisting in an assessment of a child abuse report . . . shall have immunity from any liability, civil or criminal, which might otherwise be incurred or imposed."), *with* Iowa Code § 235B.3(10) ("A person participating in good faith in reporting . . . a case of dependent adult abuse has immunity from liability, civil or criminal, which might otherwise be incurred or imposed based upon the act of making the report . . . ."). Further, such an approach in the present case is consistent with the practice of broadly construing statutory immunity provisions. *See Nelson*, 867 N.W.2d at 9 (noting that Iowa courts "construe statutory immunity provisions broadly" including the "immunity provision in section 232.73 . . . to encourage communications between physicians and DHS child abuse investigators"). The court also finds that the public policy interest of encouraging the report of suspected child abuse is similarly served in cases of suspected dependent adult abuse. *See id*. Therefore, the court shall adopt the subjective good faith standard.

"[G]ood faith 'rests on a defendant's subjective honest belief that the defendant is aiding and assisting in the investigation of a[n] . . . abuse report.'" *Nelson*, 867 N.W.2d at 8 (quoting *Garvis v. Scholten*, 492 N.W.2d 402, 404 (Iowa 1992)); *see also Garvis*, 492 N.W.2d at 404 (adopting the subjective standard of good faith). "[R]easonableness and the objective standard play no part in determining good faith." *Nelson*, 867 N.W.2d at 8 (quoting *Garvis*, 492 N.W.2d at 404). Statutes immunizing conduct performed in good faith provide qualified, not absolute, immunity. *See Hlubek v. Pelecky*, 701 N.W.2d 93,

96 (Iowa 2005).

"Qualified immunity is a question of law for the court and the issue may be decided by summary judgment." *Nelson*, 867 N.W.2d at 7 (quoting *Dickerson v. Mertz*, 547 N.W.2d 208, 215 (Iowa 1996)). "Summary judgment is an important procedure in statutory immunity cases because a key purpose of the immunity is to avoid costly litigation, and that legislative goal is thwarted when claims subject to immunity proceed to trial." *Id*. "To avoid summary judgment, the plaintiff must have evidence the defendant acted dishonestly, not merely carelessly, in assisting the DHS." *Id*. at 8. A plaintiff "needs evidence generating a genuine issue of material fact that [the defendant] acted dishonestly in communicating with [the DHS]." *Id*.

### C. Application

The court shall assume without deciding that Martin Luther could be held vicariously liable for the conduct of Wachendorf. During the relevant time, Wachendorf was the Director of Social Services at Martin Luther. *See* Appendix in Support of Motion at 46. As a social worker, Wachendorf was statutorily required to report suspected dependent adult abuse to DHS. *See id.*; *see also* Iowa Code § 235B.3(2)(g). Wachendorf stated that she "reasonably believed at the time of [her] call to DHS that . . . Lindstrom . . . may be suffering from abuse." Appendix in Support of Motion at 48; *see Nelson*, 867 N.W.2d at 8 (noting that "good faith 'rests on a defendant's subjective honest belief'" (quoting *Garvis*, 492 N.W.2d at 404)). She further stated that she "made the decision to report [the suspected abuse] to DHS on [her] own volition and based on [her] training as a mandatory reporter." Appendix in Support of Motion at 48. Thus, Wachendorf's testimony suggests that she made the report of suspected dependent adult abuse in subjective good faith.

The court finds no evidence to support Rose's assertion that Wachendorf knowingly made a false report of suspected dependent adult abuse. To the contrary, Rose admitted

8

to "squeez[ing] [Lindstrom's] finger to try to arouse him" and to repeatedly giving him "unthickened Ensure using a straw" despite repeated instruction from staff that Lindstrom was at risk of aspiration. *Id*. at 102-03, 105. Further, a CNA reported to Nurse Friedman that Rose stated that she had done a sternal rub on Lindstrom, but that staff had not witnessed it. *Id*. at 113. Wachendorf's report accurately recounted these undisputed facts. As such, the court finds that the report on its face does not suggest any falsity.

Further, Rose has not provided any evidence that Wachendorf acted dishonestly in making the report. Instead, Rose has only provided her own unsworn, self-serving statements "that the [abuse] report was falsely made." Resistance at 2. Rose's contention that Martin Luther staff "either knew of should have known" that she was utilizing "standard methods . . . for arousing an[] unresponsive person" is neither supported by any evidence in the record nor is it relevant to the court's analysis. *Id.*; *see Garvis*, 492 N.W.2d at 404 ("Negligence in forming or acting on th[e] belief is irrelevant to the good faith determination."). Rose does not point to any evidence in the record showing that Wachendorf knew that the allegations in the abuse report were false. Thus, Rose's defamation claim fails to survive summary judgment. *See Nelson*, 867 N.W.2d at 8 (requiring the plaintiff to "have evidence the defendant acted dishonestly" to avoid summary judgment). Rose has also failed to produce any evidence supporting her allegation that Warren, Lindstrom's daughter and power of attorney, directed Wachendorf to make the report of suspected dependent adult abuse. *See* Appendix in Support of Motion at 48 (stating that Wachendorf "made the decision to report this to DHS on [her] own volition" and that she "was never coaxed or asked by [Warren] . . . to make a report to DHS"). Because Rose has failed to point to any evidence giving rise to a question of fact regarding the known falsity of the abuse report Wachendorf, and by extension Martin Luther, are entitled to statutory immunity on Rose's defamation claim. Therefore, the court need not address whether the abuse report constituted a privileged communication

9

or whether the report itself constituted defamation.

Accordingly, the court shall grant the Motion.

### VII.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED**:

(1) The Motion for Summary Judgment (docket no. 28) is **GRANTED**;

(2) The Clerk of Court is **DIRECTED** to enter judgment in favor of Martin Luther Home and against Plaintiff Jennifer Kathryn Anne Rose; and

(3) The Clerk of Court is **DIRECTED** to **CLOSE THIS CASE**.

The Final Pretrial Conference is **CANCELED** and the trial date is **VACATED**.

**IT IS SO ORDERED.**

Dated this 2nd day of July, 2018.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA